## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

WILLIE WASHINGTON                                                    PLAINTIFF

V.                                  4:11CV00008 JTR

KARL BYRD, Sheriff,
Faulkner County Detention Center, et al.                          DEFENDANTS

## MEMORANDUM AND ORDER[1]

In this *pro se* § 1983 action, Plaintiff, Willie Washington, alleges that

Defendants violated his due process rights while he was incarcerated in the Faulkner

County Detention Facility ("FCDF").[2] *See* docket entries #2 and #5.

Defendants have filed a Motion for Summary Judgment, a Brief in Support, a

Supplemental Brief in Support, and a Statement of Undisputed Facts.[3] *See* docket

---

[1]  On March 21, 2011, the parties consented in writing to proceed before a
United States Magistrate Judge.  *See* docket entry #16.

[2]  Several months afer he initiated this action, Plaintiff was released from the
FCDF.  *See* docket entries #18 and #56.

[3]  It is well settled that summary judgment should only be granted when the
record, viewed in a light most favorable to the nonmoving party, shows that no
genuine issue of material fact exists, and the moving party is entitled to judgment as
a matter of law.  *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-
23 (1986); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 249-50 (1986).  The moving
party bears the initial burden of informing the court of its basis for the motion and
identifying the parts of the record that show lack of a genuine issue.  *Celotex,* 477 U.S.

-1-

entries #31, #32, #33, and #47.  Plaintiff has filed a Response, a Brief in Support, and a Statement of Disputed Facts.  *See* docket entries #39, #54, and #55.

Before addressing the merits of Defendants' Motion for Summary Judgment, the Court will set forth the relevant undisputed facts:[4]

1.      On November 11, 2010, Plaintiff was arrested on felony charges and booked into the FCDF.  *See* docket entry #33, Ex. A.  At the time of his arrest, Plaintiff was on parole from an earlier state conviction.  *Id.*

2.      On November 16, 2010, Plaintiff received a disciplinary for sleeping on a blanket after his mattress was removed from his cell.  *See* docket entries #2 and #5. He was placed in administrative segregation, but released to general population later that evening after a corporal reviewed the charges.  *Id.*

3.      On November 21, 2010, Plaintiff received a disciplinary for having an argument with another prisoner.  *Id.* He was placed in administrative segregation.  *Id.* Later that evening, a corporal reviewed the charge and sentenced him to three days in

---

at 323. To defeat a motion for summary judgment, the nonmoving party must go beyond the pleadings and establish "by affidavits, or by the depositions, answers to interrogatories, and admissions on file," that specific facts show a genuine issue for trial exists.  *See* Fed R. Civ. P. 56(c); *Celotex,* 477 U.S. at 324.

[4]      Defendants have not specifically admitted or denied Plaintiff's factual allegations.  *See* docket entry #33.  Instead, they argue that they are entitled to qualified immunity based upon the facts as alleged by Plaintiff.  *See* docket entries #32 and #47.

punitive segregation. *Id.*

4.     On December 10, 2010, Plaintiff received a disciplinary for possessing contraband in the form of an extra laundry bag. He was placed in administrative segregation. *Id.* The next day, a corporal reviewed the charge and sentenced him to five days in punitive segregation. *Id.*

5.     On December 17, 2010, Plaintiff received a disciplinary for having an argument with another prisoner. *Id.* He was placed in administrative segregation. *Id.* Later that day, a corporal reviewed the charge and released Plaintiff to general population. *Id.*

6.     On January 3, 2011, the Arkansas Department of Community Correction revoked Plaintiff's parole. *See* docket entry #33, Ex. A.

7.     On January 14, 2011, Plaintiff filed this § 1983 action alleging that Defendants violated his constitutional rights by placing him in administrative segregation, on four occasions, without providing him due process.[5] *See* docket entries #2 and #5. He sought compensatory damages,[6] as well as an injunction

---

[5]     The parties have not addressed whether *each* of the Defendants were personally involved in these alleged constitutional violations.

[6]     The Prison Litigation Reform Act ("PLRA") provides that prisoners and detainees cannot recover compensatory damages absent a physical injury. 42 U.S.C. § 1997e(e); *Royal v. Kautzky,* 375 F.3d 720, 723 (8th Cir. 2004). Plaintiff argues that he is entitled to compensatory damages because, each time he was placed in segregation, he was forced to sleep on the floor, without a mattress or bedding,

prohibiting Defendants from placing similarly situated prisoners in administrative segregation for disciplinary infractions, without providing them due process.[7] *Id.*

## II.  Discussion

### A.    Qualified Immunity Bars Plaintiff's Due Process Claim

Defendants argue that they are entitled to qualified immunity on Plaintiff's due process claim.   *See* docket entries #32 and #47.   Qualified immunity protects government officials from liability for monetary damages in a § 1983 action unless, at the time of alleged violation, their conduct violated a *clearly established* federal statutory or constitutional right. *Ashcroft v. Al-Kidd*, 131 S. Ct. 2074, 2084 (2011);

---

thereby causing him back pain.  *See* docket entries #5 and  #55.  Being required to sleep on the floor for three to five days, on two different occasions, does not constitute a condition of confinement that rises to the level of a constitutional violation.  *See, e.g., O'Leary v. Iowa State Men's Reformatory*, 79 F.3d 82, 83-84 (8th  Cir. 1996) (finding that four days without clothing, blankets, or a mattress failed to rise to the level of a constitutional violation); *Williams v. Delo*, 49 F.3d 442, 446 (8th Cir. 1995) (same). Furthermore, the grievances Plaintiff has produced suggest that his back pain was caused by being tased, on or about November 12, 2010, which was four days *before* he was placed in segregation for the first time.  *See* docket entry #55, Exs. B, C, D, and E.

Without a physical injury, Plaintiff can only recover nominal damages if he can prove his due process rights were violated. *See Williams v. Hobbs,* 662 F.3d 994, 1011 (8th Cir. 2011) (holding that a prisoner, who was denied due process in connection with his placement in segregation, was entitled to $1 for each time he was denied a due process hearing, and *not* a dollar for each day that he spent in segregation).

[7] In his Brief in Support of the Response to Defendants' Motion for Summary Judgment (docket entry #54), Plaintiff makes the conclusory assertion that, as pretrial detainee/parolee, he was entitled to "notice and a hearing" on each of the four disciplinaries he received.

*Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009).

To overcome a defendant's assertion of qualified immunity, the plaintiff must show that: (1) defendant's conduct violated a constitutional or statutory right; and (2) the constitutional or statutory right was clearly established at the time of the alleged violation. *Id.* Importantly, under the qualified immunity doctrine, "officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Moore v. City of Desloge, Mo.,* 647 F.3d 841, 846 (8th Cir. 2011); *Ambrose v. Young*, 474 F.3d 1070, 1077 (8th Cir. 2007).

Defendants argue that they are entitled to qualified immunity because it was not clearly established, in November and December of 2010, that Plaintiff was entitled to any procedural due process in connection with being placed in administrative segregation for disciplinary violations. The resolution of that issue hinges entirely on Plaintiff's "status" at the time he received the disciplinaries, *i.e.*, was he a convicted prisoner, a pretrial detainee, a parolee, or some combination of the above.

## 1.    A Convicted Prisoner's Due Process Rights under *Sandin*

In *Sandin v. O'Conner*, 515 U.S. 472, 485 (1995), the Court made it clear that, when a convicted prisoner is temporarily confined in administrative segregation, it does not impose an "atypical and significant hardship on the inmate in relation to the

ordinary incidents of prison life." *Id.* at 484.   Under *Sandin*, a convicted prisoner does not have a right to *any* procedural due process in connection with being *temporarily* placed in administrative segregation.[8]   *Id.* at 486-87 (holding that a convicted prisoner did not have any due process rights in connection with being placed in disciplinary segregation for thirty days); *Portley-El v. Brill,* 288 F.3d 1063, 1065-66 (8th Cir. 2002) (same).

## 2.    A Pretrial Detainee's Due Process Rights under *Bell*

Because pretrial detainees are presumed innocent, they can not be punished for the crime for which they have been charged.  *Bell v. Wolfish*, 441 U.S. 520, 535-37 (1979)*; Rapier v. Harris*, 172 F.3d 999, 102 (7th Cir 1999); *Martinez v. Tuner,* 977 F.2d 421, 423 (8th Cir. 1992).   Being required to comply with an administrative restriction or condition that adversely affects a pretrial detainee is not "punishment"

---

[8] In contrast, a convicted prisoner is entitled to due process if the disciplinary conviction results in the loss of good time credits or the length of disciplinary confinement is deemed to be long enough to give rise to a liberty interest.  *Wolff v. McDonnell,* 418 U.S. 539, 557 (1974); *Williams v. Hobbs*, 992 F.3d 994, 997 (8th Cir. 2011) (holding that a prisoner had liberty interest at stake, and thus a right to due process of law, in regard to being placed in administrative segregation for *fourteen years*).  If a convicted prisoner can establish such a liberty interest, due process requires that, before he can be placed in disciplinary segregation, he must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity to call witnesses and present a defense;  (3) a written statement of the evidence relied upon by the fact finder and the reasons for the disciplinary action; and (4) findings that are supported by "some" evidence. *Wolff,* , 418 U.S. at 563-67; *Superintendent v. Hill*, 472 U.S. 445, 455 (1985).

if it is "reasonably related to a legitimate governmental objective" such as maintaining

institutional order and safety.[9] *Bell*, 441 U.S. at 539-40. However, if the restriction

or condition is deemed punishment, a pretrial detainee has the right, under the Due

Process Clause, to – at a minimum – notice and an opportunity to be heard.[10]

---

[9] *See Ferguson v. Cape Girardeau County*, 88 F.3d 647, 650 (8th Cir. 1996) (holding that placement of a pretrial detainee in segregation for 13 days, was not "punishment" because it was done for the legitimate governmental objectives of monitoring the plaintiff's health and preventing him from harming other detainees); *Martinez v. Turner,* 977 F.2d 421, 423 (8th Cir. 1992) (remanding for a determination of whether the pretrial detainee was required to work as "punishment" or in furtherance of the legitimate governmental objective of "general housekeeping"); *Higgs v. Carver*, 286 F.3d 437, 438 (7th Cir. 2002) (explaining that placement of a pretrial detainee in disciplinary segregation is not "punishment" if it is done for legitimate institutional concerns such as preventing suicide, housing needs, or reducing danger to others).

[10] It is unclear whether county jails, which have limited financial resources and generally hold individuals for short periods of time, are required to give pretrial detainees the full *Wolff* and *Hill* due process protections. *See Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (explaining that: "Due process is flexible and calls for such procedural protections as the particular situation demands"); *compare Cummings v. Dunn*, 630 F.2d 649, 651 (8th Cir. 1980) (finding, without resolving the issue, that no constitutional violation occurred where a pretrial detainee was afforded the full *Wolff* due process protections before being placed in segregation); *with Senty-Haugen v. Goodno*, 462 F.3d 876, 888 (8th Cir. 2006) (explaining that a civilly committed sexual offender is entitled to, at a minimum, notice and an opportunity to be heard prior to being placed in segregation); *Higgs v. Carver*, 286 F.3d 437, 438 (7th Cir. 2002) (holding that a "pretrial detainee cannot be placed in segregation as punishment for a disciplinary infraction without notice an opportunity to be heard; due process requires no less"); *Hart v. Beasley*, 3:10CV00015 BD, 2011 WL 39134 (E.D. Ark. Jan. 6, 2011) (unpublished opinion) (holding that a pretrial detainee was entitled to notice and an opportunity to be heard prior to being placed in segregation, as punishment).

### 3.      A Pretrial Detainee/Parolee's Due Process Rights

At the time Plaintiff received each of the four disciplinaries, he was a pretrial detainee/parolee.  Based solely on his own subjective opinion, Plaintiff asserts that he was placed in administrative segregation as punishment, rather than for the legitimate governmental objectives of maintaining order and safety within the FCDF.  *See* docket entry #31, #32, #33, and #47.  While Defendants do not directly address this assertion, it seems manifest that one of the important purposes of *all disciplinaries* is to maintain order and safety within the facility.  Certainly, that is the case regarding the four minor disciplinaries that Plaintiff received, as evidenced by the fact that none of the disciplinaries resulted in him spending more than a few days in segregation.  This calls into serious question Plaintiff's entirely subjective belief that he received the disciplinaries as punishment.

Both sides agree that Plaintiff did not receive notice and a hearing either before or after he was placed in segregation.

Defendants argue that, because Plaintiff was a pretrial detainee/parolee at the time he received the disciplinaries, he had essentially the same status as any other convicted prisoner, and was not entitled to *any* due process.  In other words, Defendants argue that, as a parolee, Plaintiff was still serving the remainder of his earlier sentence, but the State had allowed him to do so outside of prison.

-8-

Plaintiff does not contest the fact that he was a parolee at the time he received the disciplinaries. However, he contends that, because he had not yet been convicted of violating his parole (based on the pending criminal charges), he was entitled to the same constitutional protections afforded a pretrial detainee, including notice and a hearing on the alleged disciplinary violations.

There do not appear to be *any* reported cases addressing how a court should analyze a pretrial detainee/parolee's due process challenge to being placed in administrative segregation.[11] However, the Court did find several cases discussing

---

[11] *See Whitfield v. Fresno Cnty. Det. Facility*, Case No. 95-17072, 1997 WL 135818 (9th Cir. March 24, 1997) (unpublished opinion) (remanding for a determination of whether a parolee's due process rights were the same as a convicted prisoners, under *Sandin,* or the same as a pretrial detainee, under *Bell.* The plaintiff later voluntarily dismissed his case before the issue was resolved); *Purkey v. Green*, Case No. 01-3134, 2005 WL 627959, 15-16 (D. Kan. Feb. 24, 2005) (unpublished opinion) (declining to resolve whether a parolee who was placed in segregation had the same due process rights as a pretrial detainee or a convicted prisoner because his claim failed, as a matter of law, under both the *Sandin* and *Bell* standards).

Defendants cite two cases discussing the proper constitutional standard to be applied to a parolee's *excessive force claims*. Nether case provides any guidance on how a court should resolve a *due process* issue similar to the one presented in this case. *See Rankin v. Klevenhagen*, 5 F.3d 103, 105-106 (5th Cir. 1993) (declining to determine whether a parolee is more like a convicted prisoner or a pretrial detainee because the Eighth Amendment "malicious and sadistic" standard applies to all excessive force claims brought by confined individuals, regardless of whether they are pretrial detainees, parolees, or convicted prisoners); *Turner v. White*, 443 F. Supp. 2d 288, 293-94 (E.D.N.Y. 2005) (discussing whether the *Fourth* or Eighth Amendment standard applied when force was used against a parolee during his arrest; but not addressing any due process rights that arise under the *Fourteenth* Amendment).

whether a pretrial detainee/parolee's due process claims arising from a guard allegedly exposing him to unconstitutional conditions of confinement *as punishment* should be analyzed under the Fourteenth Amendment's due process clause (which is applied to pretrial detainees) or the Eighth Amendment's cruel and unusual punishment provision (which applies to convicted prisoners).[12]

In *Flores v. Mesenbourg,* Case No. 95-17241, 1997 WL 303277 (9th Cir. June 2, 1997) (unpublished opinion), a parolee awaiting a revocation hearing alleged that, to punish him, guards in a county jail subjected him to a variety of inhumane conditions of confinement. The Ninth Circuit concluded that the parolee's claims should be analyzed under the Eighth Amendment standard that applies to convicted prisoners, rather than the Fourteenth Amendment standard that applies to pretrial detainees:

> Pretrial detainees are protected entirely from "punishment" under the Fourteenth Amendment, while convicted prisoners are protected only from "cruel and unusual punishment" by the Eighth Amendment. We have little difficulty concluding that the Eighth Amendment provides the proper standard for Flores. He was subject to incarceration for a parole violation because he had originally been convicted and given the sentence which was moderated by parole. His original conviction is the authority under which he was confined after his parole violation. As a

---

[12] In the Eighth Circuit, this is not an issue because the same legal standard applies to conditions of confinement claims brought by pretrial detainees and convicted prisoners. *See Davis v. Oregon County, Mo.*, 607 F.3d 543, 548-49 (8th Cir. 2010); *Butler v. Fletcher,* 465 F.3d 340, 345 (8th Cir. 2006).

convicted prisoner, he must rely on the Eighth Amendment to support his claim.

*Id.* at *1 (internal citation omitted).

In *Hamilton v. Lyons*, 74 F.3d 99, 102 (5th Cir. 1996), a pretrial detainee/parolee awaiting trial on new criminal charges alleged that guards in a county jail punished him by subjecting him to a variety of inhumane conditions of confinement. The Fifth Circuit recognized that a pretrial detainee/parolee's status is different from that of a convicted prisoner, because he has not been found guilty of the pending criminal charges that are the basis for his current confinement. However, the Court went on to note that, unlike a pretrial detainee who has not been convicted of "any" crimes, a pretrial detainee/parolee has already been found guilty of at least one prior criminal offense for which he was allowed to be released on parole. *Id.* at 104-06. This meant, according to the Fifth Circuit, that a pretrial detainee/parolee could be subject to "extensive restrictions" on his liberty. *Id.* at 105 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 483 (1972)).[13]

---

[13] In *Morrissey,* the Court recognized that: "The State has found the parolee guilty of a crime against the people. That finding justifies imposing extensive restrictions on the individual's liberty." *Id.* at 483. Thus, the Court held that a parolee facing revocation is entitled to far less due process than he received when being tried for his original criminal offense. *Id.* Specifically, pursuant to *Morrissey*, a parolee facing revocation is only entitled to: (1) written notice of violations; (2) disclosure of evidence against him; (3) attend hearing and present evidence; (4) confront and cross examine witnesses, unless there is good cause for no confrontation; (5) neutral and

Finding that a pretrial detainee/parolee fell somewhere between a convicted prisoner and a pretrial detainee, the Fifth Circuit created a new constitutional standard which requires a pretrial detainee/parolee to establish, "through direct evidence," an "expressed intent by detention facility officers to punish him for the crime for which he has been charged but not yet convicted [by exposing him to unconstitutional conditions of confinement]."[14] *Id.* at 106.

The Courts' holdings in *Morrissey, Hamilton,* and *Flores* make it clear that any liberty interest that Plaintiff may have, as a pretrial detainee/parolee, is far more circumscribed than that of a pretrial detainee. Thus, in the context of a pretrial detainee/parolee like Plaintiff, who received disciplinaries and was placed in administrative segregation for short intervals of time, it is doubtful that he can assert an actionable due process claim.

While the Court finds Plaintiff's due process claim to be of considerable

---

detached hearing body; and (6) written reasons for revocation). *Id.* at 489; *see also Langella v. Anderson*, 612 F.3d 938, 941 (8th Cir. 2010) (explaining that the decision to revoke parole need only be supported by a preponderance of the evidence).

[14]   Under *Bell*, a pretrial detainee can prevail if he demonstrates that the conditions were imposed as punishment, rather than to further legitimate governmental objectives such as safety or institutional order. *Bell*, 441 U.S. at 539-40. By requiring a pretrial detainee/parolee to offer "direct evidence" of an "expressed intent" by guards to expose him to unconstitutional conditions of confinement to punish him for the charged crime for which he had not yet been convicted, the Court in *Hamilton* gave the pretrial detainee/parolee a much more difficult road to negotiate in order to prevail on such a claim.

academic interest, it need not resolve that claim in order to grant Defendants' Motion for Summary Judgment. If nothing else, the preceding analysis has made one thing very clear: Plaintiff's alleged due process right is *not* clearly established under either federal statutes or case law.

Thus, Defendants are entitled to qualified immunity on Plaintiffs' due process claim. *See Wagner v. Jones*, 664 F.3d 259, 273 (8th Cir. 2011) (explaining that, when considering the second prong of the qualified immunity defense: "[I]t is not enough that a right be established in an abstract sense; rather the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right"); *Mathers v. Wright*, 636 F.3d 396, 399 (8th Cir. 2011) (same).

## B.    Plaintiff's Request for Injunctive Relief

Defendants make the conclusory argument that a finding of qualified immunity entitles them to dismissal of the entire case. *See* docket entries #32 and #47. However, qualified immunity applies only to a request for damages, not to injunctive relief. *Pearson v. Callahan*, 555 U.S. 223, 242 (2009)*; Hopkins v. Saunders*, 199 F.3d 968, 977 (8th Cir. 1999); *Williams v. Delo*, 49 F.3d 442, 445 (8th Cir. 1995).

In his pleadings, Plaintiff also seeks an injunction requiring Defendants to change their alleged policy or practice regarding the way pretrial detainees/parolees are placed in administrative segregation, without allowing them any due process. *See*

docket entries #2 and #5.  As indicated earlier, Plaintiff is no longer confined in the FCDF.  Thus, he is no longer subject to the allegedly unconstitutional policy or practice that serves as the sole basis for his request for injunctive relief.  Under well established case law, that renders moot his claim for injunctive relief.  *See, e.g., Owens v. Isaac,* 487 F.3d 561, 564 (8th Cir. 2007) (explaining that a prisoner's or detainee's request for injunctive relief is moot if he is no longer subject to the allegedly unconstitutional condition or practice); *Hanks v. Prachar*, 457 F.3d 774, 775 (8th Cir. 2006) (same); *Smith v. Hundley;* 190 F.3d 852, 855 (8th Cir. 1999) (same).  Accordingly, the due process claim Plaintiff has asserted against Defendants must be dismissed, with prejudice.

### III.  Conclusion

IT IS THEREFORE ORDERED THAT Defendants' Motion for Summary Judgment (docket entry #31) is GRANTED, and this case is DISMISSED, WITH PREJUDICE.

Dated this <u>16th</u> day of March, 2012.

_____
UNITED STATES MAGISTRATE JUDGE